UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**CINDY DILL**,

                Plaintiff,

v.

**CAROLYN COLVIN, Acting Commissioner of Social Security**,

                Defendant.

Case No. 1:14-cv-01946-KI

OPINION AND ORDER

James S. Coon
Swanson, Thomas, Coon & Newton
The Thomas Mann Building
820 SW 2nd Ave., Ste. 200
Portland, OR 97204

    Attorney for Plaintiff

Billy J. Williams
Acting United States Attorney
District of Oregon
Janice E. Hebert
Assistant United States Attorney

1000 SW Third Ave., Ste. 600
Portland, OR 97201-2902

L. Jamala Edwards
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Cindy Dill brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying her application for disability insurance benefits ("DIB"). I reverse the decision of the Commissioner and remand for further proceedings.

## BACKGROUND

Dill filed an application for DIB on March 1, 2012, alleging disability beginning September 1, 2010. The application was denied initially and upon reconsideration. After a timely request for a hearing, Dill, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on July 29, 2013.[1]

On August 7, 2013, the ALJ issued a decision finding Dill not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on October 6, 2014.

---

[1] At the hearing, Dill attempted to amend her alleged onset date of disability to March 2013, but this amendment is not reflected in the ALJ's decision. Tr. 37.


**DISABILITY ANALYSIS**

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one

"which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Parra*, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.*

## THE ALJ'S DECISION

The ALJ noted Dill met the insured status requirements through September 30, 2016. She gave Dill the benefit of the doubt and found Dill's work for Micro-Trains Line was not substantial gainful activity ("SGA"). Dill had the following severe impairments: minimal spondylosis at C5-6; fibromyalgia; polyarthralgia; myalgia; restless leg syndrome; obesity; hearing loss; history of otosclerosis; and mood disorder. The ALJ found these impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.

Given these impairments, the ALJ thought Dill had the following residual functional capacity ("RFC"): she could occasionally lift and/or carry 20 pounds; frequently lift and/or carry ten pounds; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; with the need to stand and stretch every hour estimated to take one to three minutes per hour; no jobs requiring fine hearing for safety purposes; no work in an excessively noisy environment (noisier than freeway traffic); no work directly with the public, but she could have peripheral public contact; and only occasional interaction with coworkers and supervisors.

Relying on testimony from a vocational expert ("VE"), the ALJ determined Dill could perform her past work as a small parts assembler, or other work in the national economy including bench assembler and inspector/hand packager.

Page 5 - OPINION AND ORDER

**FACTS**

Dill was 40 years old, with a GED, as of the date of her unamended alleged onset of disability. She has worked as a retail sales clerk, as a bartender, and most recently as a small parts assembler. Her last job lasted from April 2012 to April 2013.

At the time of her unamended alleged onset date of disability, Dill's medical treatment was through Klamath Open Door Family Practice. On August 31, 2010, just before her alleged onset date, Dill saw Esteban Miller, M.D., to check in about her use of Requip to treat her restless leg syndrome. Dill reported doing "very well with her health" and asked for a refill of Requip saying it worked well at night. Tr. 374. She noticed symptoms if she drove longer than four hours. At her November appointment, she discussed her hearing troubles. In December, Dill sought treatment for hot flashes and mood swings.

Her February 2011 appointment was to address cold symptoms. In May, Dill reported increasing trouble with restless leg syndrome, fatigue, and pain in her forearms. Dr. Miller prescribed clonidine. Dill returned in July complaining of pain in her hands and forearms, not always related to her activity level. Ibuprofen or aspirin relieved the pain after a few hours. She also reported weakness and dropping things. She indicated no joint pain on examination, and she exhibited a full range of motion in her fingers, wrist and elbow. Her grip strength was slightly less on the right side. Dr. Miller recommended exercises and stretching, and trying meloxicam.

Dill went to the emergency room in November 2011 complaining of moderate pain and aching all over her body the previous three weeks. The doctor examined her back and was not able to reproduce any tenderness. Her neck was supple. Her legs and arms showed no swelling or redness, and she had 5/5 muscle strength in her arms and legs, with normal gait, balance and

coordination. The doctor discussed rheumatologic disorder or carpal tunnel syndrome, and wanted her to undergo an EKG to rule out a cardiovascular problem. Dill left without the EKG against medical advice.

A week later, Dill established care with La Clinica Del Valle ("LCDV") Phoenix Health Center for her insomnia and restless legs. On examination, her extremities were normal, her gait, reflexes and sensation were normal, and she had full range of motion without pain or tenderness in her back. Dill conceded to using methamphetamine off and on for several years, but had not used any in several months. Mary E. Barnum, FNP, prescribed Requip for Dill's restless leg syndrome. A week later, on December 6. 2011, Barnum noted Dill's complaints of restless leg syndrome and upper extremity pain. Tylenol PM helped "some." Tr. 300. On examination, Dill had bilateral trapezoid, sternocleomastoid muscle spasms. She had normal range of movement, denied decreased strength or sensation, and declined the C-spine series. Barnum prescribed methocarbamol.

Later that same day, on December 6, 2011, Dill established care with the Medford Medical Clinic, LLP. Dill reported the Requip "works well." Tr. 321. She complained of widespread joint and muscle pain, worse in the neck and shoulders. Dill confirmed she had a history of IV drug use, but had been sober for six months. Rachael Orozco, M.D., prescribed Requip, meloxicam, Prilosec, and Ortho Tri-Cyclen.

At a follow-up December 19, 2011 appointment, Dill continued to complain of muscle pain. Dr. Orozco referred her to a rheumatologist to confirm her diagnosis of fibromyalgia. She gave Dill a trial of Cymbalta in the meantime.

In March 2012, Dill returned to the LCDV clinic complaining of a dull achy feeling in her pelvis. Jessica Diaz, M.D., noted: "Grossly normal movement and strength. Patient able to get up and down from exam table without difficulty. Patient able to walk around clinic without difficulty. Back: full ROM although bending forward seems to partially exacerbate pain, no vertebral tenderness, mild L lower paraspinal tenderness, negative straight leg raise, patellar DT - 2/4 bilaterally, Ankle DTR - 2/4 bilaterally. Neurovascular in tact. Normal heel walk, toe walk, tandem walk." Tr. 436. In June, Dill complained of stomach flu symptoms. She returned for a routine gynecologic exam in August.

On Dr. Orozco's referral, rheumatologist Theerapol Prasertsuntarasai, M.D., examined Dill in May 2013. Dill displayed normal muscle bulk, strength and tone, and her gait was unremarkable. She had full range of motion of her peripheral joints, but was positive for 12 of 18 fibromyalgia trigger points. The doctor started Dill on Celexa, advised Dill to lose weight and engage in more aerobic exercise. X-rays ordered by the doctor showed, at most, mild narrowing in the medial knee joint spaces, minimal narrowing of the end joints on Dill's fingers, minimal focal spondylosis at C5-6 of the cervical spine, and normal elbows.

After a year, Dill returned to the LCDV clinic in June 2013, reporting her diagnosis of fibromyalgia and seeking medication refills. She reported Cymbalta made her feel "really blue," and she was afraid to try Celexa. Tr. 496. She was taking Meloxicam "very rarely maybe once every other week." *Id.* Her 30 tablet prescription had lasted six months.

## DISCUSSION

Dill challenges the ALJ's decision on two points. First, she notes the ALJ did not wait for material she submitted after the hearing regarding her previous work history, and the Appeals

Council failed to give a reason for rejecting the evidence in its decision denying Dill's request for review.  Second, the ALJ's opinion fails to identify the evidence she relied on in support of Dill's RFC.

I.      Dill's Previous Work

At Dill's hearing on July 29, 2013, Dill's counsel informed the ALJ that, following the hearing, he would attempt to submit Dill's attendance records from her job.  The ALJ responded that if the records came in prior to her decision, she would consider them.  Dill's attorney then asked about a time frame for a decision, and the ALJ guessed three weeks.  Instead, the ALJ issued her decision nine days later, on August 7, 2013.  Since the ALJ issued her decision before he expected it, Dill's attorney sent the packet of material, which included a note from Dill's former employer, Dill's attendance records, and Dill's job review, on August 14, 2013 for consideration by the Appeals Council.

More specifically, the packet contained a letter from Dill's former employer who wrote that Dill "did put much effort into work given to her but had to take several breaks outside of regular breaktime and often (usually several times a month) left work early due to pain or fatigue.  After several months of this we had to let her go."  Tr. 300.  Dill's normal workweek was 40 hours, Monday through Thursday from 6:00 A.M. to 4:30 P.M.  The attendance records demonstrate Dill left early her third day of work, and she was absent or left work early multiple times every month of the year she worked for Micro-Trains Lines.  *See* Tr. 501-514 (left early seven times in May; left early five times in June and was absent four times; in July, Dill left early 11 times and was absent once; in August she left early four times and was absent once; etc.).  In

her August review, her employer complimented her on being a fast learner who did a good job, but reminded her to improve her attendance.

The Appeals Council is required to "consider the additional evidence" submitted by the claimant. 20 C.F.R. § 404.970(b). The Appeals Council did so by stating, "We concluded that the additional evidence does not provide a basis for changing the Administrative Law Judge's decision. The additional evidence consisted of 15 pages from Micro-Trains Line dated July 29, 2013." Tr. 3.

Contrary to Dill's assertion, the Appeals Council is not required to give a "germane" reason to reject this evidence. *Compare Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996) (Appeals Council "not required to make any particular evidentiary finding" when it rejects evidence) *with Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (ALJ must take lay testimony into account and must give reasons for the rejection that are germane to each witness). Instead, additional evidence presented to the Appeals Council but not seen by the ALJ may be considered in determining if the ALJ's denial of benefits is supported by substantial evidence. *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000). If not, the case must be remanded to the ALJ for consideration of the new evidence, rebuttal by the Commissioner, and any additional testimony needed because of the new evidence. *Id.* The evidence is material if it bears "directly and substantially on the matter in dispute" and there is a "reasonable possibility" that the new evidence would have changed the outcome. *Mayes v. Massinari*, 276 F.3d 453, 462 (9th Cir. 2001) (quotations and citations omitted). The question, then, is "whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of

Page 10 - OPINION AND ORDER

legal error." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1451-54 (9th Cir. 1993)).

Here, the additional evidence corroborates Dill's testimony that she missed work "due to pain and fatigue" and tends to undermine the ALJ's conclusion that Dill's testimony about her inability to work was not credible. Tr. 500. In other words, the evidence supports Dill's testimony that she had trouble standing and sitting at work before needing to rest or go home for the rest of the day, contrary to the ALJ's conclusion that Dill's work activity suggests Dill's daily activities were greater than she reported. *Compare* Tr. 21 with Tr. 24. More importantly, unless the ALJ is able to distinguish Dill's past work on some basis, the evidence suggests the ALJ's RFC does not specify all of Dill's limitations and restrictions; the employer's statement and attendance records support the notion that Dill could not perform her past work, and raise a question about whether Dill could perform the other jobs identified by the VE.

In sum, the evidence Dill submitted to the Appeals Council throws the ALJ's opinion into question; her conclusion that Dill could perform her past work, or perform other work consistent with the RFC, is not supported by substantial evidence.

II.     Residual Functional Capacity

Dill argues the ALJ's RFC is based on opinions she rejected, and that the ALJ does not indicate where she finds support for the RFC she formulated.

The RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning eight hours a day, five days a week, or equivalent. SSR 96-8p, 1996 WL 374184 (July 2, 1996). RFC is the most a person can do in spite of limitations or restrictions. *Id.* at *4. "The RFC assessment

must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* at *7.

Here, the ALJ gave less weight to the opinions of Disability Determination Services' consulting physicians, J. Scott Pritchard, D.O., and Martin B. Lahr, M.D., but did not indicate on what other medical evidence she relied to find Dill could perform work with the limitations she identified. Further, the ALJ incorporated more from these opinions than she rejected, while purporting to reject them as "not consistent with the record as a whole." Tr. 24. Specifically, she included the following limitations as opined by these doctors: Dill could occasionally lift and/or carry 20 pounds; frequently lift and/or carry ten pounds; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; no jobs requiring fine hearing for safety purposes; no work in an excessively noisy environment; and no work directly with the public, but can have peripheral public contact. The only differences between the RFC the ALJ formulated and these doctors' opinions are the stretching limitations and a limitation on occasional contact with coworkers and supervisors, and the absence of climbing and crawling restrictions.

Since I am reversing and remanding this decision for further consideration of the evidence offered by Dill's former employer, the ALJ should clarify the RFC and how she arrived at it.

III.    Remedy

I have concluded the additional evidence presented to the Appeals Council but not seen by the ALJ must be considered by the ALJ. Accordingly, I remand the case to the ALJ for

Page 12 - OPINION AND ORDER

consideration of the new evidence, rebuttal by the Commissioner, and any additional testimony needed because of the new evidence. *Harman*, 211 F.3d at 1180.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

DATED this  23rd   day of December, 2015.

                                          /s/ Garr M. King
                                         Garr M. King
                                         United States District Judge